# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| CAMDEN COUNTY, GEORGIA,<br><br>    Plaintiff,<br><br>v.<br><br>LEXON INSURANCE COMPANY,<br><br>    Defendant. | |
| LEXON INSURANCE COMPANY;<br>JEKYLL SOUND DEVELOPMENT<br>COMPANY, LLC,<br><br>    Third-Party Plaintiffs,<br><br>v.<br><br>BPJS INVESTMENTS, LLC; GEORGE<br>L. "BOOG" POTTER; MIKE<br>MARTINEZ; ROBERT STEVEN<br>WILLIAMS, SR.; and ROBERT<br>STEVEN WILLIAMS, JR.,<br><br>    Third-Party Defendants. | 2:14-CV-20 |

## ORDER

Before the Court is Third-Party Defendant Robert Steven Williams, Jr.'s ("Rob"[1]) Motion to Dismiss, dkt. no. 110. The Motion's target is Defendant/Third-Party Plaintiff Lexon Insurance Company ("Lexon") and Third-Party Plaintiff Jekyll Sound Development Company, LLC's ("JSDC") Third-Party

---

[1] The Court uses Rob's preferred name to avoid confusion with Robert Steven Williams, Sr.—also a party in this case. Dkt. No. 136-1 at 39:25-40:2.

Complaint, dkt. no. 82. The Motion has been fully briefed and orally argued, dkt. nos. 111, 116, 136, 139-40, and is now ripe for disposition. The Motion will be **DENIED**.

## BACKGROUND[2]

**Camden County Sued Lexon and Lexon Sued Third-Party Defendants**

Camden County, Georgia ("Camden County") is suing Lexon regarding a release of liability relating to development of a subdivision. Dkt. No. 82 ¶ 10. Camden County claims that Lexon's agents—the Third-Party Defendants—fraudulently induced Camden County to enter into the release. Id. ¶ 11.

In 2006, Lexon issued bonds covering a developer's subdivision infrastructure obligations. Id. ¶ 15. The obligee was a division of Camden County. Id. In 2008, the developer went bankrupt without finishing the work. Id. ¶ 16. The bankruptcy estate transferred title to some subdivision lots, including a marina, to JSDC. Id. ¶ 17.

In late 2009 or early 2010, Lexon and JSDC agreed to give subdivision lots, the marina, and $4 million to Third-Party Defendant BPJS Investments, LLC ("BPJS"), in exchange for BPJS securing from Camden County a release of Lexon's liability. Id. ¶ 18. The deal went through. Id. ¶ 20. Camden County

---

[2] For purposes of this Order, the Court assumes the truth of undisputed facts alleged in the complaint. See Koch v. Royal Wine Merchants, Ltd., 847 F. Supp. 2d 1370, 1373 n.1 (S.D. Fla. 2012).

claims that Lexon, through the Third-Party Defendants, fraudulently induced it to enter into the release. Id. ¶ 21.

BPJS' members—whom Lexon supposed to be the other Third-Party Defendants—are Tennessee citizens. Id. ¶¶ 5-9. One of them is Rob. Id. ¶ 9. On December 9, 2014, Third-Party Plaintiffs sued them for indemnity, failure of consideration/breach of contract, unjust enrichment, and misrepresentation. Id. ¶¶ 23-34.

**Rob Was Involved with BPJS**

Rob moved to dismiss the complaint against him on April 20, 2015. Dkt. No. 110. He argued that the Court lacks personal jurisdiction over him. Dkt. No. 111 at 2. He testified that he does not own any real property in Georgia, is not a BPJS member, does not own any interest in BPJS, did not execute any of the documents at issue in this case, and did not "call[ ], fax[ ], mail[ ], or email[ ]" any Georgia residents regarding the facts underpinning this lawsuit. Dkt. No. 111-1 at 2. He averred that he never communicated with Camden County, Lexon, or JSDC regarding the transactions at issue in this case. Dkt. No. 140-1 ¶¶ 14, 18-22.

Rob testified that he had been BPJS' secretary, and may still be. Dkt. No. 136-1 at 12:2-16, 23:6-14. He confirmed that BPJS' owner/members were Mirobo, LLC ("Mirobo") and Wilrite, LLC ("Wilrite"). Id. at 12:17-21; see also Dkt. No.

136-2 at 4, 10. Rob was a member of Mirobo and managing member of Wilrite. Id. at 13:4-19. He owned between 45 and more than 50 percent of Wilrite at the times relevant to this case. Id. at 20:21-21:9. At some point, Mirobo transferred its entire interest in BPJS to Wilrite; Wilrite remains BPJS' sole owner. Id. at 19:14-20:5. Rob does not have any corporate memberships or major investments other than Wilrite. Id. at 40:14-41:2. Despite his having owned more than half of Wilrite at some point, Rob denies ever having been controlling member of Mirobo, Wilrite, or BPJS. Dkt. No. 140-1 ¶ 27.

BPJS, Rob did not dispute, was organized under Georgia law and exists to sell the subdivision lots and marina. Dkt. No. 136-1 at 14:12-15:10, 17:24-18:3. BPJS still owns the lots, but the marina was foreclosed upon. Id. at 22:3-21. Rob, through Wilrite, invested in BPJS in the hope of making money from the properties. Id. at 77:12-78:8. His partners kept him abreast of developments at the site by regularly copying him on emails. Id. at 78:10-83:15.

Rob and his partners anticipated that he would operate the marina. Id. at 32:14-15 ("[The marina] was going to be my personal responsibility . . . ."), 34:8-10. He never did. Id. at 35:17-18. He did, though, meet its operator once, on a visit to the site. Id. at 35:21-36:10. He was accompanied by two of his business partners. Id. at 37:13-20.

AO 72A
(Rev. 8/82)

BPJS had a note payable to Rob in the amount of $100,000 on September 30, 2011, and Rob did not dispute in his deposition that this appears to refer to a loan from him. Id. at 17:13-20; Dkt. No. 197-1. He later testified that he "ha[s] no knowledge of any loan to BPJS and do[es] not believe [that he] actually made any such loan." Dkt. No. 140-1 ¶ 28.

## LEGAL STANDARD

A plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). If the defendant submits evidence, then the plaintiff must as well, unless the defendant's evidence is only conclusory. Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006); see also Scovill Fasteners, Inc. v. Sure-Snap Corp., 428 S.E.2d 435, 436 (Ga. Ct. App. 1993). The court must construe conflicting evidence in favor of jurisdiction. PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 810 (11th Cir. 2010).

## DISCUSSION

For the Court to exercise personal jurisdiction, 1) Georgia's long-arm statute must let it, and 2) so must federal constitutional due process. Madara, 916 F.2d at 1514. Here, personal jurisdiction over Rob satisfies both requirements.

# I. JURISDICTION OVER ROB SATISFIES GEORGIA'S LONG-ARM STATUTE.

Georgia's long-arm statute authorizes jurisdiction over Rob. O.C.G.A. § 9-10-91 allows jurisdiction over a nonresident who "[t]ransacts any business within this state." This language is construed "most liberally." Booksing v. Holley, 437 S.E.2d 857, 860 (Ga. Ct. App. 1993). Three requirements have to be met:

> [F]irst, the nonresident must have purposefully done an act or consummated a transaction in Georgia; second, the cause of action must arise from or be connected with such act or transaction; and third, the exercise of jurisdiction by the courts of this state must not offend traditional fairness and substantial justice.

Gateway Atlanta Apts., Inc. v. Harris, 660 S.E.2d 750, 757 (Ga. Ct. App. 2008). The last two elements merely incorporate federal due process requirements, so they will be discussed in the next section. See Ralls Corp. v. Huerfano River Wind, LLC, 27 F. Supp. 3d 1303, 1315 (N.D. Ga. 2014); Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005). The first is met here.

Rob transacted business in Georgia when he loaned BPJS $100,000.[3] BPJS exists entirely to own and sell properties in Georgia. Dkt. No. 136-1 at 14:12-15:10, 17:24-18:3. Rob hoped to make money by investing in it. Id. at 77:12-78:8. He loaned it $100,000. Id. at 17:13-20. This action

---

[3] Whether Rob made a loan is disputed, but the Court construes conflicting evidence in favor of jurisdiction. PVC Windoors, Inc., 598 F.3d at 810.

6

qualifies as transacting business in Georgia, as shown by Drennen v. First Home Savings Bank, 420 S.E.2d 376 (Ga. Ct. App. 1992). The appellants there guarantied construction of a motel in Georgia. Id. at 377. They were not Georgia residents, and the notes were negotiated and executed elsewhere. Id. at 378. Still, the Georgia Court of Appeals found personal jurisdiction, partly because of two facts similar to those here. Id. at 379. The appellants executed guaranty notes "the proceeds of [which] were used to construct and equip a motel in Georgia owned and operated by . . . a corporation registered to do business in Georgia." Id. at 378. And that company existed "for the express purpose of constructing and operating the motel," so the appellants "undoubtedly intended for the loan payments to be made from the proceeds of the motel's Georgia operations." Id. Their activity thus qualified as "transact[ing] business within Georgia." Id.; see also Noorani v. Sugarloaf Mills Ltd. P'ship of Ga., 708 S.E.2d 685, 689 (Ga. Ct. App. 2011) (finding jurisdiction where "[t]he stated purpose of the guaranty [the appellant] executed was" ensuring performance of a Georgia property lease). The icing on the cake was that the appellants kept abreast of site operations by visiting. Id.

The present case is akin to Drennen. Just as the appellants there executed notes to build something in Georgia,

7

Rob here made a loan to fund Georgia real-estate improvements and deals. Just as the appellants there guaranteed a loan that was to be paid with Georgia profits, Rob here funded BPJS, which existed to profit from Georgia properties. Like the <u>Drennen</u> appellants, Rob visited Georgia to see the site—and he received regular email management updates. Thus, just like the <u>Drennen</u> appellants, Rob transacted business in Georgia. The first long-arm element is satisfied, and so Georgia's long-arm statute is not an independent obstacle to personal jurisdiction.

## II. PERSONAL JURISDICTION OVER ROB SATISFIES FEDERAL CONSTITUTIONAL DUE PROCESS.

The U.S. Constitution also allows personal jurisdiction. The Court must determine whether "all contacts between [Rob] and [Georgia] . . ., individually or collectively, . . . satisfy" due process. <u>Louis Vuitton Malletier, S.A. v. Mosseri</u>, 736 F.3d 1339, 1357 (11th Cir. 2013). They do, because Rob: (1) "'purposefully availed' himself of the privilege of conducting activities within the forum state"; (2) "the plaintiff[s'] claims 'arise out of or relate to' at least one of [his] contacts"; and (3) personal jurisdiction would comport with "traditional notions of fair play and substantial justice." <u>Id.</u> at 1355 (citations omitted).

AO 72A
(Rev. 8/82)

### A. Rob Purposefully Availed Himself of the Privilege of Acting in Georgia.

Rob purposefully availed himself of the privilege of acting in Georgia. The question is whether he did purposeful things that would put himself on notice that he might be haled into court here—as opposed to having only "'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (citations omitted). A common way of satisfying this test is "purposefully tak[ing] advantage of the opportunity to do business" in the forum state. Packard v. Temenos Advisory, Inc., 159 F. Supp. 3d 1344, 1359 (S.D. Ga. 2016). That is what Rob did here. He loaned $100,000 to BPJS, whose sole business was Georgia real estate; planned to personally manage BPJS' marina, and visited it to talk with the operator; served as BPJS' secretary[4]; hoped to profit from BPJS; kept aware of BPJS management issues; and owned at least 45 percent of Wilrite, which in turn owned between 25 and 100 percent of BPJS. See discussion supra. He thus purposefully availed himself of the chance to do business in Georgia. See Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, 245 F. Supp. 2d 1248, 1256 (N.D.

---

[4] True, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). But becoming an officer in a forum-state corporation, whose profit-seeking activities occur entirely within the forum state, is surely evidence that one has availed oneself of the privilege of doing business in the forum state.

AO 72A
(Rev. 8/82)

Ga. 2002) (weighing "the contemplated future consequences of the relationship, the terms of the contract, and the parties' actual course of dealing."); cf. Amason & Assocs., Inc. v. Columbus Land Dev., LLC, No. 7:12-CV-02459, 2014 WL 467509, at *8 (N.D. Ala. Feb. 5, 2014) (finding jurisdiction over forum-state construction project's guarantors given their "continuous course of dealing" on project); Noorani, 708 S.E.2d at 689 (affirming jurisdiction where appellant guaranteed performance of Georgia lease); Drennen, 420 S.E.2d at 377-79 (affirming jurisdiction where appellants guarantied loans for Georgia motel construction and operation). Thus, the first due process prong is satisfied.

### B. Third-Party Plaintiffs' Claims Arise Out of Rob's Contacts with Georgia.

The second due process element is also satisfied, because Third-Party Plaintiffs' claims arise out of Rob's Georgia contacts: They revolve around his supposed fraudulent inducement of Camden County (a Georgia government entity) to enter into a liability release as part of a deal for BPJS to take ownership of Georgia properties. Dkt. No. 82 ¶¶ 23-34.

### C. Personal Jurisdiction Over Rob Comports with Fair Play and Substantial Justice.

Lastly, personal jurisdiction over Rob satisfies fair play and substantial justice. Because Rob purposefully availed himself of the benefits of doing business in Georgia,

AO 72A
(Rev. 8/82)

"he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Co., 471 U.S. at 477. He has not done so. The third due process prong is satisfied. Therefore, both the U.S. Constitution and Georgia's long-arm statute authorize the Court to exercise personal jurisdiction over Rob.

**CONCLUSION**

For the reasons above, Rob's Motion to Dismiss (Dkt. No. 110) is **DENIED**.

**SO ORDERED**, this 10th day of January, 2017.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA